Filed 1/30/25  P. v. Macias CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081487 |
| v. | (Super.Ct.No. RIF2004151) |
| MARTIN ROJAS MACIAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry C. Yang, Judge.  Affirmed.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winders, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant and appellant Martin Rojas Macias was convicted by a jury of multiple offenses involving acts of sexual abuse committed against Jane Doe over the course of approximately 10 years while Jane Doe was under the age of 16.  He was sentenced to an indeterminate term of 15 years to life, as well as a determinate term of 35 years two months in state prison.

Defendant appeals, arguing:  (1) the trial court abused its discretion by admitting testimony of an uncharged prior act of abuse pursuant to Evidence Code section 1108; (2) the trial court abused its discretion by admitting expert testimony on child sexual abuse accommodation syndrome (CSAAS); (3) the trial court erred by failing to give a limiting instruction on the use of CSAAS testimony; (4) his trial counsel rendered ineffective assistance of counsel by failing to request a limiting instruction on the use of CSAAS testimony;; (5) the cumulative effect of the trial errors was prejudicial; and (6) his sentence is unconstitutional under the United States and California constitutions because an aggregate term that exceeds his life expectancy should be considered per se cruel or unusual punishment.  We conclude that none of these arguments warrants reversal, but we order that an error in the abstract of judgment be corrected.

## II.  BACKGROUND

### A.  *Facts and Charges*

Defendant and Jane Doe's mother began a romantic relationship sometime in 2004 when Jane Doe was approximately six years old.  In 2020, Jane Doe disclosed to family members that defendant had committed multiple acts of sexual abuse against her over the

2

course of approximately 10 years.  As a result, defendant was charged with (1) five counts of committing a lewd and lascivious act with a child under 14 years of age (counts 1-5; Pen. Code,[1] § 288, subd. (b)(1)); (2) one count of attempted oral copulation by force (count 6; §§ 664, 287, subd. (c)(2)(A)); (3) one count of aggravated sexual assault of a child (count 7; § 269, subd. (a)(5)); (4) attempted sodomy (count 8; §§ 664, 286, subd. (c)(2)(C)); and (5) committing a lewd or lascivious act on a child 14 or 15 years of age (count 9; § 288, subd. (c)(1)).

B.  *Relevant Evidence at Trial*

At the time of trial, Jane Doe was 25 years old.  She testified that defendant began a dating relationship with her mother when Jane Doe was approximately six years old, and he eventually moved into the family residence.  Jane Doe testified extensively regarding numerous acts of sexual abuse committed by defendant until Jane Doe turned approximately 16 years old.[2]  One of the incidents occurred when Jane Doe was 14 or 15

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  The acts of abuse included (1) multiple occasions when Jane Doe was seven years old in which defendant entered her bedroom while she was sleeping and touched Jane Doe's breasts and body; (2) multiple occasions when Jane Doe was approximately nine years old in which defendant would touch her crotch with his hands and attempt to penetrate her vagina with his fingers; (3) an occasion when Jane Doe was approximately 10 years old in which defendant removed Jane Doe's pants and attempted to rub her vaginal area with his hands; (4) multiple occasions when Jane Doe was between the ages of nine and 12 years old where defendant would expose his penis and attempt to rub it against Jane Doe's buttocks or vagina; (5) occasions during this same time period in which defendant would either masturbate in front of Jane Doe or force Jane Doe to masturbate him until he ejaculated onto Jane Doe's thighs; (6) an occasion in which defendant grabbed her thigh and placed his hands inside her pants while the two were riding together in a vehicle; and (7) three occasions when Jane Doe was approximately 11

*[footnote continued on next page]*

3

years old and involved defendant entering the bathroom while Jane Doe was taking a shower, disrobing, entering the shower with Jane Doe, and touching Jane Doe's breasts, vagina, and buttocks. When Jane Doe began to yell and resist, defendant grabbed her from behind and pressed his erect penis against her buttocks toward her anus. He eventually left when Jane Doe continued to resist. This incident formed the basis of the attempted sodomy charge in count 8. Jane Doe testified that she never revealed the incidents of abuse to anyone until she was approximately 22 years old because she was afraid, embarrassed, did not feel she would be supported, and did not think people would believe her.

Jane Doe's sister, C.C., was called as a witness to testify regarding the circumstances surrounding Jane Doe's disclosure of the sexual abuse to family. Over defendant's objection, the trial court also permitted C.C. to testify regarding a prior uncharged act of abuse committed by defendant. The trial court held that such testimony was admissible under Evidence Code section 1101, subdivision (b), for the purpose of showing motive, intent, and common plan as to all of the charged offenses; it also held that such evidence could be admitted as propensity evidence under Evidence Code section 1108 with respect to count 8. As a result, C.C. briefly testified that when she was 15 years old, she visited a family member's home as part of a holiday gathering. While taking a bath, defendant entered the bathroom and tried to touch C.C.'s breasts and her private "part." Defendant left when C.C. physically resisted and threatened to scream.

years old in which defendant exposed his erect penis and attempted to force Jane Doe to touch it with her hands and orally copulate him.

4

C.C. admitted she had never publicly disclosed the incident to family prior to Jane Doe's accusations against defendant but stated that she had disclosed the incident in private counseling.

Finally, the prosecution called a psychologist to testify as an expert regarding CSAAS. The expert testified that CSAAS cannot be used as a diagnostic tool to determine whether sexual abuse has actually occurred. It can only be used to help understand why a child might react in certain ways if abused. She explained how many of these reactions or patterns of behavior can seem counterintuitive and that not all children exhibit all behaviors. The expert generally opined that children who are abused by someone with whom they have an ongoing relationship tend not to report the abuse immediately. Further, when the abuse involves an ongoing relationship with repeated behavior, children tend to group the memories and cannot necessarily separately recall each individual instance of abuse.

C. *Verdict and Sentence*

The jury found defendant guilty on all charges. Defendant was sentenced to an indeterminate term of 15 years to life and an additional determinate term of 35 years two months in state prison, comprised of: (1) a term of 15 years to life on count 7 (§ 269, subd. (a)(5)); (2) consecutive, middle terms of 6 years on counts 1 through 5 (§ 288, subd. (b)(1)); (3) a consecutive term of 3 years on count 6 (§§ 664, 287, subd. (c)(2)(A)); (4) a consecutive one year six months, representing one-third the middle term, on count 8 (§§ 664, 286, subd. (c)(2)(C)); and (5) a consecutive eight-month term, representing one-

third the middle term, on count 9 (§ 288, subd. (c)(1)). Defendant appeals from the judgment.

## III. DISCUSSION

A. *The Trial Court Did Not Err in Admitting Prior Acts Evidence*

On appeal, defendant argues the trial court erred by permitting C.C. to testify regarding a prior uncharged act of sexual abuse by defendant. We find no abuse of discretion in the record before us.

1. General Legal Principles and Standard of Review

"Section 1101 of the Evidence Code limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823 (*Michaud*).) Generally, evidence of a person's character, including evidence of specific instances of his or her conduct, is inadmissible when offered to prove his or her conduct on a specified occasion. (*Ibid.*; Evid. Code, § 1101, subd. (a).) However, the statute provides that such evidence is admissible " 'to prove some fact . . . other than [the person's] disposition to commit such an act,' such as the person's 'motive, opportunity, intent, preparation, plan, knowledge, [or] identity.' " (*Michaud*, at p. 823; Evid. Code, § 1101, subd. (b).)

In addition to the exceptions set forth in Evidence Code section 1101, subdivision (b), evidence of a prior sexual offense may be admitted to show a defendant's propensity to commit a sexual offense. "[Evidence Code section 1108] provides that '[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's

6

commission of another sexual offense or offenses is not made inadmissible by [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352.' " (*Michaud*, *supra*, 4 Cal.5th at p. 823.) "[Evidence Code] [s]ection 352, in turn, sets out the general rule that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Michaud*, at p. 823.)

"A trial court's rulings admitting evidence under Evidence Code sections 1101 and 1108 are reviewed for abuse of discretion." (*Michaud*, *supra*, 4 Cal.5th at p. 824.) " 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

2. Application

Initially, we observe that the nature of defendant's challenge is not entirely clear. The trial court admitted C.C.'s prior act testimony under Evidence Code section 1101 for the purpose of showing intent, motive, and a common plan as to all of the charged offenses, and also under Evidence Code section 1108 for the limited purpose of showing defendant's propensity to commit the offense charged in count 8. However, defendant's substantive arguments on appeal address only whether the prejudicial impact of C.C.'s testimony outweighed its probative value as propensity evidence under section 1108, and he argues only that admission of this evidence to show defendant's propensity to commit

7

the offense was prejudicial.[3]

Generally, "[t]o demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) An appellant who fails to do so does not meet his burden on appeal, and a reviewing court need not consider the claim. (*People v. Catlin* (2001) 26 Cal.4th 81, 133 [The defendant "fails to offer any authority or argument in support of this claim, so it is not considered."]; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408 (*Wheeler*) [argument forfeited for failure to raise it in opening brief and attempting to recast the argument in reply].) Thus, to the extent defendant is claiming that the trial court erred by admitting C.C.'s testimony under Evidence Code section 1101, we conclude that defendant has failed to meet his burden to show an abuse of discretion. (*Lewis*, *supra*, 46 Cal.4th at p. 1288 [arguments addressing only the admissibility of evidence under Evid. Code, § 1108 "fails to establish that the trial court abused its discretion by admitting the evidence under Evid. Code, § 1101"].)

With respect to the trial court's admission of C.C.'s testimony for the limited purpose of showing defendant's propensity to commit the offense charged in count 8, we conclude that the record discloses no abuse of discretion. "To determine whether section 1108 evidence is admissible, trial courts must engage in a 'careful weighing process'

---

[3] In his reply brief, defendant argues for the first time that the evidence was also inadmissible under Evidence Code section 1101. But, even then, his only substantive argument is that the evidence could not be used to show his propensity to commit the crime and fails to address the trial court's determination that C.C.'s testimony was admissible under Evidence Code section 1101 for the purpose of showing intent, motive, and a common plan.

under section 352." (*Michaud*, *supra*, 4 Cal.5th at p. 823.)  Relevant factors to consider include " 'its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission . . . .' " (*Id.* at pp. 823-824.)

Here, the prior act shared significant factual similarities with the charged offense in count 8.  Jane Doe testified that when she was approximately 14 or 15 years old, she was taking a shower when defendant entered the bathroom, disrobed, entered the shower, and began touching Jane Doe's breasts, vagina, and buttocks.  Defendant refused to stop even after Jane Doe yelled and attempted to resist him; but, he eventually stopped after unsuccessfully attempting to insert his erect penis inside Jane Doe's anus.  In comparison, C.C. testified that when she was approximately 15 years old, defendant entered the bathroom while C.C. was bathing, attempted to touch C.C.'s breasts and private "part" and, eventually, left when C.C. physically resisted and threatened to scream.  Based upon these factual similarities, the trial court could reasonably conclude that C.C.'s testimony was highly probative as propensity evidence related to count 8.

Defendant briefly contends that the probative value of C.C.'s testimony was minimal because the alleged prior act occurred 24 years prior to C.C.'s testimony at trial, rendering it remote.  It is true that remoteness is one factor that bears on the probative value of prior acts evidence.  (*People v. Harris* (1998) 60 Cal.App.4th 727, 739.)

9

However, remoteness in this context does not refer to the passage of time between the prior act and the time of trial but, rather, the time between the prior act and the charged offense. (*People v. Branch* (2001) 91 Cal.App.4th 274, 285 (*Branch*) [Because "[r]emoteness . . . relates to 'the question of predisposition to commit the charged sexual offens[e],' " a "substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses."].) Thus, the relevant time period is approximately 14 years and not 24 years as defendant claims on appeal.[4] Regardless, this court has explained that remoteness is but one factor for the trial court to consider, and "the similarities between the prior and current acts" can "balance[e] out the remoteness." (*People v. Waples* (2000) 79 Cal.App.4th 1389, 1395; see *Branch*, at p. 285.) Given the factual similarities between the prior act and the charged offense in this case, we cannot say it was unreasonable, arbitrary, or capricious for the trial court to conclude that the prior act testimony was probative, despite any remoteness.

Further, the record does not suggest that C.C.'s testimony presented a significant risk that the testimony would unduly prejudice defendant, confuse the jury, or consume significant time. The prior act was significantly less inflammatory than the charged offense. (*People v. Falsetta* (1999) 21 Cal.4th 903, 924 [little risk of undue prejudice where prior crimes "were not inflammatory when compared to the charged offenses"]; *People v. Ewoldt* (1994) 7 Cal.4th 380, 408 [minimal prejudicial effect where "evidence

_____

**4** Both the prior act and the charged offense occurred when the victims were approximately 15 years of age; and C.C. is approximately 14 years older than Jane Doe.

10

was no more inflammatory than [victim's] testimony regarding the charged offenses"].) C.C. was already a witness giving testimony related to the charged offense, and her testimony specific to the prior act was relatively brief.[5] (*People v. Mani* (2022) 74 Cal.App.5th 343, 371 [no undue consumption of time where testimony concerning prior acts was supplied by witnesses who also testified as to the charged offenses]; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1338 [no risk of confusion where evidence of prior acts did not consume much time at trial].) And the trial court gave specific jury instructions limiting the use of the prior act testimony.[6] (*People v. Fruits* (2016) 247 Cal.App.4th 188, 207 ["jury instructions on reasonable doubt . . . , the limited purpose for which the evidence of the prior [acts] was admitted . . . [,] substantially reduced the risk of prejudice"].) Thus, the trial court could reasonably conclude any risk of undue prejudice or confusion was minimal in this case and did not substantially outweigh the probative value of the prior offense testimony under Evidence Code section 352.

Where evidence of a prior uncharged sexual offense is not made inadmissible under Evidence Code section 352, such evidence is admissible as propensity evidence

---

[5] The majority of C.C.'s testimony involved the circumstances surrounding Jane Doe's disclosure of the acts of sexual abuse that form the basis of the charges against defendant. Her direct testimony regarding defendant's prior act comprised only two pages in the reporter's transcript.

[6] The jury was instructed that C.C.'s testimony could only be considered as propensity evidence for count 8 and further instructed that it could not find defendant committed the charged offense based solely on propensity evidence. We also observe that the prosecutor reminded the jury of this limitation in closing argument.

11

under Evidence Code section 1108. As such, we find no abuse of discretion in the trial court's decision to admit C.C.'s testimony and no error warranting reversal. Because we conclude the trial court did not err in admitting this evidence, we need not address defendant's additional contention that the trial court's error was prejudicial.

B. *Defendant Has Forfeited His Challenge to Admission of CSAAS Testimony*

Defendant also contends that the trial court abused its discretion by admitting opinion testimony regarding CSAAS. We conclude that this issue has been forfeited for failure to object in the trial court.

The California Supreme Court has " 'consistently held that [a] "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' " (*People v. Partida* (2005) 37 Cal.4th 428, 433-434.) "The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal." ' " (*Id.* at p. 434.) Thus, the failure to raise a specific objection in the trial court to the admission of evidence forfeits the issue on appeal. (*People v. Doolin* (2009) 45 Cal.4th 390, 434; *Wheeler*, *supra*, 60 Cal.4th at pp. 412-413.) Here, defendant concedes that he never objected to the admission of expert opinion testimony on the subject of CSAAS in the trial court. As such, his challenge has been forfeited, and we decline to reverse on this basis alone.

To avoid forfeiture, defendant claims on appeal that his trial counsel's failure to object constituted ineffective assistance of counsel. However, a reviewing court

12

presumes that "counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Thus, a defendant's burden to show ineffective assistance is " 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Ibid.*) As we explain, we conclude the record is inadequate to show ineffective assistance on direct appeal.

Specifically, defendant asserts that CSAAS evidence was inadmissible because (1) the evidence had no probative value other than to impermissibly bolster Jane Doe's credibility; and (2) the evidence constitutes scientific evidence that should have been excluded as unreliable under *People v. Kelly* (1976) 17 Cal.3d 24.[7] However, in our view, there was clearly a rational basis for trial counsel to decline to raise either of these objections in the trial court.

Notably, California courts have recognized for decades that CSAAS testimony is admissible for the purpose of rehabilitating a witness when his or her credibility is challenged—i.e. bolstering the witness's credibility. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300 ["[E]xpert testimony on the common reactions of child molestation victims . . . is admissible to rehabilitate such witness's credibility when the defendant

---

[7] Generally, *Kelly* stands for the proposition that "admissibility of expert testimony based on 'a new scientific technique' requires proof of its reliability—i.e., that the technique is ' "sufficiently established to have gained general acceptance in the particular field to which it belongs . . . .' " (*People v. Venegas* (1998) 18 Cal.4th 47, 76.)

suggests that the child's conduct after the incident . . . is inconsistent with his or her testimony claiming molestation."]; *People v. Brown* (2004) 33 Cal.4th 892, 906; *People v. Julian* (2019) 34 Cal.App.5th 878, 885; *People v. Sedano* (2023) 88 Cal.App.5th 474, 479.)  Likewise, numerous published decisions have concluded that expert opinion on CSAAS is not the type of scientific evidence subject to the *Kelly* test of admissibility. (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 173 ["[E]xpert CSAAS testimony is not ' " 'scientific' " evidence' subject to the *Kelly* rule."]; *People v. Harlan* (1990) 222 Cal.App.3d 439, 447-450 [CSAAS opinion testimony not subject to *Kelly* rule].)

Given these authorities, trial counsel could have reasonably concluded that the objections that defendant now seeks to pursue on appeal were without merit.  And "[c]ounsel's failure to make a futile or unmeritorious objection is not deficient performance."  (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092.)  Because the record does not disclose counsel's actual reasons for failure to object to the introduction of CSAAS evidence and there exists at least one reasonable basis upon which counsel could have decided not to assert the objections defendant now raises on appeal, the record does not show ineffective assistance of counsel warranting reversal on direct appeal, and we decline to reach the merits of defendant's otherwise forfeited claim.

C.  *Defendant's Claim of Instructional Error Is Forfeited*

In addition to claiming that CSAAS testimony was improperly admitted, defendant also contends that the trial court erred when it failed to give a limiting

14

instruction on the use of CSAAS expert testimony.[8]  As a general rule, "a court should give a limiting instruction on request, [but] it has no sua sponte duty to give one." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1051 (*Hernandez*).)  Thus, a defendant who fails to request a limiting instruction in the trial court forfeits his claim that it was error for the court not to so instruct.  (*People v. Clark* (2011) 52 Cal.4th 856, 942.)  Here, defendant concedes that he never requested a limiting instruction on the use of CSAAS testimony in the trial court.  As such, this claim of error has been forfeited.

In order to avoid forfeiture, defendant argues that his failure to request a limiting instruction may be excused because (1) CSAAS testimony presents an extraordinary circumstance warranting the recognition of a sua sponte duty to give a limiting instruction; and (2) his trial counsel's failure to request such an instruction should be deemed ineffective assistance of counsel.  We are unpersuaded by both arguments.

1. <u>We Decline To Recognize a Sua Sponte Duty To Give a Limiting Instruction</u>

Generally, the question of whether the trial court has a sua sponte duty to instruct on a specific principle of law concerns an issue of law subject to de novo review. (*People v. Burch* (2007) 148 Cal.App.4th 862, 870.)  As defendant correctly notes, the issue of whether a trial court has a sua sponte duty to give a limiting instruction when admitting CSAAS evidence is unsettled.  In *People v. Housley* (1992) 6 Cal.App.4th 947 (*Housley*), the Court of Appeal concluded such a sua sponte duty exists, relying primarily on "[t]he frequency with which defendants recently have challenged the alleged misuse

---

[8]  Specifically, defendant points out that the standard jury instructions include an optional limiting instruction pertaining to CSAAS evidence.  (CALCRIM No. 1193.)

15

of CSAAS evidence" to conclude that "this type of testimony may be unusually susceptible of being misunderstood and misapplied by a jury," such that "requiring such an instruction would avoid potentially erroneous convictions occasioned by counsel's inadvertent or incompetent failure to request a limiting admonition." (*Id.* at pp. 956-958.) In contrast, *People v. Mateo* (2016) 243 Cal.App.4th 1063 (*Mateo*) concluded that no sua sponte duty exists, reasoning that the express statutory language of Penal Code section 1127b[9] and Evidence Code section 355[10] weighed against imposing such a duty. (*Mateo*, at pp. 1071-1073.)

In our view, the reasoning in *Mateo* is more persuasive. We also note that the California Supreme Court has expressed the view that CSAAS testimony is analogous to expert testimony used to explain the behavior of domestic violence victims (*Brown*, *supra*, 33 Cal.4th at p. 905) and has further held that a trial court has no sua sponte duty to give limiting instructions related to expert testimony of intimate partner battering and

---

[9] Penal Code section 1127b provides: "When, in any criminal trial . . . , the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows: Duly qualified experts may give their opinions on questions in controversy at trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable. No further instruction on the subject of opinion evidence need be given."

[10] Evidence Code section 355 provides: "When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

its effects.[11] (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 83). As a result, we are unpersuaded that the presentation of CSAAS evidence constitutes the type of extraordinary circumstance in which trial courts are required to deviate from the general rule that trial courts have no duty to give a limiting instruction absent a request. Because defendant did not request a limiting instruction in this case, the failure to give such an instruction does not, on its own, establish error, and any claim the trial court should have given such an instruction has been forfeited.

2. Defendant Has Not Met His Burden To Show Ineffective Assistance

Defendant also asserts that we should reach the merits of his instructional error claim because trial counsel was ineffective for failing to request a limiting instruction. However, as we have already explained, a claim of ineffective assistance of counsel must be rejected on direct appeal if the record sheds no light on why counsel acted or failed to act in the manner challenged and there could have been a reasonable tactical purpose for counsel's decision. (*Mai*, *supra*, 57 Cal.4th at p. 1009.) In asserting ineffective assistance of counsel on appeal, defendant has not directed our attention to anything in the record to suggest the reason for his trial counsel's failure to request a limiting instruction. Instead, defendant claims that we can find ineffective assistance solely on the ground that there could be no reasonable tactical purpose for counsel's decision.

However, our Supreme Court has repeatedly recognized that competent attorneys

---

[11] "Although often referred to as 'battered women's syndrome,' 'intimate partner battering and its effects' is the more accurate and now preferred term." (*In re Walker* (2007) 147 Cal.App.4th 533, 536, fn. 1.)

may rationally conclude that the risk of highlighting unfavorable testimony by requesting a limiting instruction outweighs the benefits of the instruction. (*People v. Freeman* (1994) 8 Cal.4th 450, 495; *People v. Maury* (2003) 30 Cal.4th 342, 394; *Henandez, supra*, 33 Cal.4th at pp. 1052-1053.) As pointed out in *Mateo*, such reasoning could apply equally to a limiting instruction regarding CSAAS evidence. (*Mateo*, *supra*, 243 Cal.App.4th at p. 1076.) Thus, because the record in this case does not disclose the reasons for trial counsel's decision, and because there exists at least one rational tactical reason for trial counsel to refrain from requesting a limiting instruction in this case, defendant has failed to meet his burden to show ineffective assistance of counsel on appeal.

D. *Cumulative Prejudice*

Defendant also contends that the cumulative impact of the trial court's purported errors warrants reversal. It is true that " '[a] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) However, since we have found no reversible error on appeal, we have no occasion to discuss the prejudicial impact of any specific error, and there is no reversible error to accumulate. (*People v. Bracamontes* (2022) 12 Cal.5th 977, 1007.)

E. *Defendant Has Not Established His Sentence Was Cruel or Unusual*

In addition to trial errors, defendant asserts that his sentence must be reversed because any sentence that exceeds his life expectancy violates both the United States and California constitutions. We disagree.

18

Generally, "[a] punishment violates the Eighth Amendment [of the United States Constitution] if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' [Citation.] A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230-1231.) In this case, we need only consider whether defendant's punishment violates the prohibition set forth in the California constitution to resolve the merits of defendant's claim.[12] Courts typically "analyze three criteria to determine whether a sentence is 'cruel or unusual' under article 1, section 17 of the Constitution of California: the nature of the offense and the offender . . . ; a comparison of the sentence with those for other more serious offenses under California law; and a comparison of the sentence with those in other states for the same offense." (*Retanan*, at p. 1231; see *People v. Russell* (2010) 187 Cal.App.4th 981, 993.)

Here, defendant was convicted of nine different offenses based upon distinct incidents that occurred over the course of 10 years. On appeal, defendant does not suggest that the sentence imposed for each offense is disproportionate to the severity of the offense, that the sentence imposed for each offense is more severe than that typically

---

[12] "Whereas the federal Constitution prohibits cruel 'and' unusual punishment, California affords greater protection to criminal defendants by prohibiting cruel 'or' unusual punishment." (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1092.) Thus, to the extent defendant's sentence is permissible under the California constitution, it stands to reason that it could not be prohibited under the higher threshold established by the United States constitution.

19

imposed for similar offenses under California law, or that the sentence for any specific offense diverges significantly from the sentence that would be imposed for the same offense in other states. Instead, the primary argument advanced by defendant on appeal is that the aggregate sentence must be considered per se cruel or unusual because the aggregate term is beyond what he could conceivably complete in his lifetime.

However, defendant has not cited to a single published decision that has held that the length of an aggregate sentence imposed for multiple offenses may establish that a punishment is cruel or unusual in violation of the United States or California constitutions.[13] And we observe that California authorities have repeatedly upheld sentences significantly longer than the one imposed in this case against such challenges. (*People v. Guenther* (2024) 104 Cal.App.5th 483, 534-535 [Defendant's "age and life expectancy in prison together makes the sentence imposed the equivalent of life without the possibility of parole. But this fact does not render his sentence unconstitutional."]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1172-1173 [sentence of 85 years to life not cruel and unusual].) *People v. Haller*, *supra*, 174 Cal.App.4th at p. 1087 [sentence of 78 years to life not cruel and unusual]; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 573 ["imposition of a sentence upon defendant under the Three Strikes law of 210 years to life does not constitute cruel and unusual punishment"]; *Retanan*, *supra*, at pp. 1230-1231 [sentence of 135 years to life not cruel and unusual]; *People v. Byrd* (2001)

---

[13] Instead, defendant cites primarily to concurring opinions in *People v. Deloza* (1998) 18 Cal.4th 585 and *People v. Johnson* (2023) 88 Cal.App.5th 487. Such opinions have only persuasive and not precedential value (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383).

89 Cal.App.4th 1373, 1382-1383 [sentence of 115 years plus 444 years to life not unconstitutional as cruel or unusual].)

Given the weight of authority on this point, we are unpersuaded, given the facts of this case, by defendant's contention that the length of his aggregate sentence alone can be the basis for finding a violation of the prohibition against cruel or unusual punishment in the California constitution or the prohibition against cruel and unusual punishment in the United States constitution. As defendant has not met his burden to show error in his sentencing, remand for resentencing is unwarranted.

E. *The Abstract of Judgment Should Be Corrected*

The People point out that the abstract of judgment in this case contains an error in that the trial court sentenced defendant to full consecutive terms on counts 2 through 6, but the abstract of judgment suggests defendant was sentenced to " '1/3 consecutive' " terms.[14] Generally, "[w]hen the record on appeal discloses error… in the abstract of judgment . . . , appellate counsel should attempt correction in the trial court." (*People v. Culpepper* (1994) 24 Cal.App.4th 1134, 1139.) Nevertheless, we retain authority to correct such errors on appeal (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187) and, in the interest of judicial economy, we will order that the abstract of judgment be corrected to accurately reflect the trial court's pronouncement of judgment.

---

[14] We note that the numerical terms given for these offenses are correct. The abstract of judgment errs by indicating that the terms reflect 1/3 of the mid-term rather than the fact the terms are fully consecutive.

21

## IV.  DISPOSITION

The trial court is ordered to correct the abstract of judgment to reflect that defendant's sentence represents consecutive full terms for counts 2 through 6.  The trial court is further ordered to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


CODRINGTON
Acting P. J.


MENETREZ
J.

22